J-S43038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN NAJUNAS | |
| Appellant | No. 1669 MDA 2015 |

Appeal from the Judgment of Sentence September 18, 2015
in the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0002153-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                          **FILED JUNE 20, 2016**

Appellant John Najunas appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas following his jury trial convictions for possession of a controlled substance with intent to deliver ("PWID"),[1] possession of a controlled substance,[2] and possession of drug paraphernalia.[3]  We affirm.

In its opinion, the trial court sets forth the relevant facts underlying this case derived from the trial evidence as follows:

Daniel Hastings, a United States Postal Inspector, was alerted by postal management about concerns related to a foreign piece of

_____

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(32).

mail from China that did not have a valid return address. After obtaining a search warrant for the package, opening it and examining its contents, Hastings recognized that it contained illegal controlled substances, commonly known as bath salts. [Appellant] was identified on the package as the intended recipient with his home address set forth thereon as 324 South White Street, Shenandoah, Pa.

Hastings set up a controlled delivery of the package to take place at [Appellant's] home with assistance of the Schuylkill County Drug Task Force. The delivery was unsuccessfully attempted on March 12, 2014 as no one answered the door of the residence at the time. Early the next day, March 13, 2014, [Appellant's] son, John Najunas, Jr., appeared at the Shenandoah post office, where the package had been held since the prior day. The son requested the package. As he was leaving the post office after he had signed for the package and it was released to him, the son was apprehended. The package was removed from the son's control and he was taken to the basement of the post office. A short time later, [Appellant] appeared at the post office's front counter inquiring about the package and his son.

Upon being alerted of [Appellant's] presence, Hastings, together with Leo Securda, the latter having been a detective of the Schuylkill County District Attorney's Office, exited the post office basement and went to the front counter where [Appellant] was given the package. As [Appellant] was turning to leave the post office, Securda emerged from behind the counter and the package was recovered from [Appellant]. Hastings and Securda accompanied [Appellant] to the basement of the post office where after receiving *Miranda* warnings, [Appellant] gave Hastings a written statement.

\*\*\*\*\*

The package was secured by Hastings with evidence tape and subsequently transported by him to the State Police Crime Laboratory where [a] forensic scientist, Nicole Blascovich, examined its contents. After doing so, Blascovich found that the contents included 57.93 grams, plus/minus 0.01 grams, of pyrrolidinovalerophenone (PVP), derived from 2-aminopropan-1-one, commonly known as bath salts, a Schedule I controlled substance.

According to Securda, who also had been a member of the Schuylkill County Drug Task Force and was qualified to testify as an expert witness in the sale and delivery of controlled substances, the excessive quantity of the drug involved in this case indicated that the purpose for possessing it was to repackage and sell it to other persons. Per Securda, bath salts are commonly sold in quantities of one-tenth of a gram. The amount recovered from [Appellant's] possession, lethal if consumed over a limited period by one individual, constituted enough for up to 580 individual re-sale packages.

Trial Court Pa.R.A.P. 1925(a) opinion, filed December 9, 2015 ("1925(a) Opinion"), pp. 2-5.

On August 26, 2015, a jury found Appellant guilty of PWID, possession of a controlled substance, and possession of drug paraphernalia. On September 18, 2015, the trial court imposed one to two years' incarceration on the PWID conviction and one year of probation on the paraphernalia conviction.[4] Appellant filed a notice of appeal on September 24, 2015, and a Pa.R.A.P. 1925(b) statement of matters complained of on appeal on October 21, 2015. The trial court filed its 1925(a) Opinion on December 9, 2015.

Appellant raises the following issues for our review:

1. DID THE COURT ERR IN ADMITTING THE EVIDENCE AS TO THE TYPE AND QUANTITY OF CONTROLLED SUBSTANCES WITHOUT A CHAIN OF CUSTODY?

2. DID THE TRIAL COURT UNDULY AND ACTIVELY TAKE PART IN THE PROSECUTION OF THE CASE?

3. DID THE COURT ERR IN FAILING TO GRANT A MISTRIAL AFTER THE COMMONWEALTH OFFERED IMPROPER TESTIMONY

---

[4] The possession of a controlled substance conviction merged for sentencing purposes.

ON SEVERAL OCCASIONS FROM WHICH THE JURY COULD INFER [APPELLANT] WAS INVOLVED IN PRIOR CRIMINAL ACTIVITY?

4. WAS THE EVIDENCE OFFERED BY THE COMMONWEALTH SUFFICIENT TO SUPPORT THE POSSESSORY DRUG CRIMES CHARGED?

Appellant's Brief at 7.

Appellant first claims that the trial court erred by admitting the controlled substances into evidence because the Commonwealth failed to prove a proper chain of custody for the package that contained the bath salts. *See* Appellant's Brief, pp. 9-10. This claim lacks merit.

This Court has stated the well-established standard of review for admission of evidence claims as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, [this Court's] standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super.2012).

The trial court found that the Commonwealth had adequately proven the chain of custody for the package containing the bath salts, and admitted it into evidence. N.T. 8/26/2015, p. 99. As the trial court explained:

> Hastings had testified that following its recovery from [Appellant], the package was secured by Hastings and later transported by him to the laboratory for testing. The laboratory scientist testified that when received by the laboratory the evidence tape on the package showed no signs of tampering. Hastings also testified that the package he presented at trial showed no signs of tampering. Any question on chain of custody

- 4 -

implicated the weight to be given by the jury to the evidence and did not serve as a basis to preclude the opinion offered by the analyst.

1925(a) Opinion, p. 5 (internal citation omitted).

The trial court's determination regarding the admission of evidence over Appellant's chain of custody objection was not error.[5]

Next, Appellant alleges the trial court took an unduly active part in the trial by calling a recess at which the court asked the prosecutor his theory of the case. *See* Appellant's Brief, pp. 10-12. Indeed, the trial court discussed the Commonwealth's theory of the case and intended proof with the parties outside the presence of the jury following the testimony of the postal inspector. *See* N.T. 8/26/2015, pp. 58-77. However, defense counsel did not lodge a contemporaneous objection to the trial court's intervention,[6] and

---

[5] At trial, counsel objected specifically as follows:

> [Defense Counsel]: Yes, there's no information of where this [package] went from the day - - the 13[th] on the post office till the 18[th] when it arrived [at the police laboratory] in Harrisburg.

N.T. 8/26/2015, p. 99. To the extent Appellant now raises a chain of custody complaint encompassing any date prior to March 13, 2014, Appellant waived this issue by failing to raise a contemporaneous objection at trial. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 84 (Pa.2008) ("the absence of a specific contemporaneous objections renders the appellant's claim waived.").

[6] To the extent defense counsel lodged objections during this recess, counsel objected only to the Commonwealth's characterization of Appellant's custody status at the post office and the Commonwealth's proposed expert testimony, not the intervention of the trial court regarding its inquiry into the Commonwealth's theory of the case. *See* N.T. 8/26/2015, pp. 61-74.

Appellant has accordingly waived this argument. *See Bauhammers*, *supra*.

Further, Appellant's claim lacks merit. During the initial portion of the recess, the trial court questioned the prosecutor out of concern of wasting the jury's time if the Commonwealth had no evidence to support certain elements of the crimes charged. *See* N.T. 8/26/2015, pp. 58-77. The Commonwealth responded to the court's satisfaction, and the trial court allowed the Commonwealth to continue and prove its case. *Id.* The remainder of the recess involved the intended testimony of the Commonwealth's proposed expert. *Id.* This discussion arose from an objection brought by defense counsel that was effectively a motion *in limine*. *Id.* at 62-63. Accordingly, this discussion was not the trial court prosecuting the Commonwealth's case, but rather responding to a defense request to preclude a Commonwealth witness. Therefore, Appellant's second claim fails even if we reach the merits.

In his third issue, Appellant claims the trial court erred in failing to grant a mistrial for the Commonwealth's reference to Appellant as a known drug dealer. *See* Appellant's Brief, pp. 12-13. This issue lacks merit.

The standard of review regarding the denial of a motion for mistrial is abuse of discretion:

> In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves

not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Commonwealth v. Culver***, 51 A.3d 866, 871 (Pa.Super.2012).

Defense counsel requested a mistrial twice. First, counsel objected following a comment by the postal inspector that the jury could have construed as a statement that Appellant was a known user of bath salts. ***See*** N.T. 8/26/2015, pp. 23-27. During the course of the sidebar following the testimony, counsel requested a mistrial or that the trial court sustain the objection and instruct the jury to disregard the testimony as a statement of opinion. ***Id.*** The trial court sustained the objection and gave the requested jury instruction. ***Id.*** Counsel did not further object. ***Id.*** Any negative wrought upon Appellant by the postal inspector's comment was adequately eliminated by the trial court's instruction. The trial court did not err in refusing to grant a mistrial in this instance.

Defense counsel also requested a mistrial during the testimony of Commonwealth witness Police Chief Shawn Tray.[7] During Chief Tray's testimony, the following exchange occurred:

Q. Okay. And at that time, did you have occasion to come in contact with a - - an incident involving John Najunas, Sr.?

A. Yes.

Q. Okay. And is that John Najunas, Sr., in the courtroom here today?

A. Yes.

Q. He's been identified previously?

A. Yes.

Q. Now, could you tell us basically how this came about?

A. As a member of the Drug Task Force, we interview a lot of people. During them interviews, Mr. Najunas was identified - -

[Defense Counsel]: I object to these - - hearsay.

[Prosecutor]: Withdraw the question.

[Defense Counsel]: I would ask for a mistrial.

N.T. 8/26/2015, pp. 134-135. At the ensuing sidebar discussion, the trial court and counsel discussed the highly objectionable nature of the response. *Id.* at 135-136. However, the trial court indicated that it would not grant a mistrial as the witness had not completed his answer and the Commonwealth withdrew the question. *Id.* at 136. When asked by the court whether he wished the court to address the matter with the jury,

_____

[7] Chief Tray is a member of the Schuylkill County Drug Task Force and an officer in the Shenandoah Police Department.

defense counsel declined and lodged no further objection on the matter once the trial resumed. *Id.* at 136-137. The trial court did not abuse its discretion in ruling on this second defense motion for a mistrial.

In his last issue, Appellant claims the Commonwealth failed to adduce sufficient evidence to sustain his convictions. *See* Appellant's Brief, pp. 13-14. Specifically, Appellant claims the Commonwealth failed to prove he had knowing possession of the controlled substance where the container was always in the possession of the police and the Commonwealth's evidence regarding the quantity of the controlled substance was insufficient to establish Appellant had the intent to deliver. *Id.* This claim lacks merit.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa.Super.2014).

The Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act") provides, in pertinent part, as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * *

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State Board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

* * *

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a).

Here, the trial court explained its rejection of Appellant's sufficiency of the evidence claims as follows:

> The evidence . . . indicates that [Appellant] went to the post office to retrieve the package addressed to him at his home address after he had sent his son to retrieve it and the latter had not exited the post office following his attempt to get the package. Upon [Appellant] receiving the package, which he acknowledged was for him, he was immediately prevented from leaving the post office with it.
>
> Although [Appellant] did not have possession of the package for a long period of time, he had received and held it, and later admitted in writing that he had ordered the drug and expected its delivery. Further, testimony from Securda about the extensive quantity of the drug in the package – which was exhibited to the jury to view – identifying the amount which would constitute one dose (described as the quantity contained in a Sweet 'N Low packet), indicating that the quantity would have a street value of up to $11,600.00, and describing the potential lethality of the quantity to an individual, provided the jury sufficient evidence upon which to base a determination that [Appellant] intended to possess the drug not simply for his own use but for delivery to one or more other people.

1925(a) Opinion, p. 8 (citation omitted).

Viewed in the light most favorable to the Commonwealth as verdict winner, the trial court properly concluded that the evidence was sufficient to convict Appellant of PWID, possession of a controlled substance, and possession of drug paraphernalia.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2016